UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 25-cv-20395-ALTMAN/LETT

HOVSEP KOTELYAN,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,

    Defendant.

_____/

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, NCL (Bahamas) Ltd., ("Norwegian") moves for summary judgment on its First Affirmative Defense under Federal Rule of Civil Procedure 56(a).

## Table of Contents

Introduction...........................................................................................................................................2

Relevant Contract Provisions..............................................................................................................2

Memorandum of Law...........................................................................................................................3

I.    The Athens Convention's prerequisites are met............................................................................3

II.    The Athens Convention's damages limitation was reasonably communicated to Plaintiff. .....4

    A.  The physical characteristics prong is satisfied.................................................................................4

    B.  Plaintiff had two months to become meaningfully informed of the contract's terms before the cruise began, and he accepted the contract on embarkation day. .........................................7

Conclusion .............................................................................................................................................8

Case No. 25-cv-20395-RKA

## Introduction

Plaintiff embarked on the *Norwegian Spirit* for a twelve-day cruise in January 2024 that began in New Zealand and ended in Australia. Unfortunately, however, Plaintiff became severely ill onboard, fell into critical condition, and was medically disembarked in New Zealand. Plaintiff's claims in this civil action sound in negligent evacuation and negligent medical care, among similar theories.

Plaintiff booked the cruise two months before it began and accepted the ticket contract on embarkation day. In the ticket contract, the Parties agreed that the damages limitation in the Athens Convention would apply to cruises that do not touch the United States or Europe. Through this motion, Norwegian seeks to enforce its rights in the contract to limit its potential liability.

## Relevant Contract Provisions

For its first affirmative defense, Norwegian invoked the "'Athens Convention Relating to the Carriage of Passengers and their Luggage by Sea' of 1974, as well as the 'Protocol to the Athens Convention Relating to the Carriage of Passengers and their Luggage by Sea' of 1976 ('Athens Convention'), which limits Norwegian's liability for death or personal injury to a passenger to the amount specified in the cruise ticket contract." D.E. 10 at 5.

In Section 6(d) of the ticket contract, the Parties agreed that for all "international cruises which neither embark, disembark nor call at any U.S. Port or European Member State, Carrier shall be entitled to any and all liability limitations and immunities for death and/or personal injury as provided in the Athens Convention . . . ." [D.E. 35-1 at 10–11] (typeface altered from all-caps for readability). Section 6(d) continues by describing the applicable provisions: "The Athens Convention limits the carrier's liability for death of or personal injury to a guest to no more than 400,000 special drawing rights ("SDR") per guest (approximately U.S. $570,000), which fluctuates depending on the daily exchange rate as published in the Wall Street Journal." *Id.* at 11. And Section 6(d) concludes with blue links to .pdf files of the Athens Convention with a pincite to the English translation. *See id.*

**Memorandum of Law**

The Court "shall grant summary judgment" on an affirmative defense if the movant identifies the defense "on which summary judgment is sought" and "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). "[S]ome alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Here, there is no genuine dispute that the Athens Convention's prerequisites are met and that the Athens Convention limitations were reasonably communicated to Plaintiff.

**I.   The Athens Convention's prerequisites are met.**

The United States has not ratified the Athens Convention and, thus, it "carries no force of law on its own." *Wajnstat v. Oceania Cruises, Inc.*, 2011 WL 13099034, at *2 (S.D. Fla. July 12, 2011). But a contract for carriage can incorporate the Athens Convention's limitation on carrier liability, which makes the limitation enforceable as a contract term. *See id..* As a prerequisite, however, the voyage must not begin or end or call upon a port in the United States—otherwise, the limitation of liability would be invalid under 46 U.S.C. § 30527(a). *See id.*

Plaintiff's voyage began in New Zealand and ended in Australia, and all ports called upon during the voyage were in one of those two countries. *See* [D.E. 35-1 at 28] *and* [D.E. 37 at ¶¶ 4–6]. Because the itinerary did not include a United States port, the Athens Convention's limitation provision can apply as a contract term so long as the term was reasonably communicated to Plaintiff. *See Ritcey v. NCL (Bahamas) Ltd.*, --- F. Supp. 3d ---, 2025 WL 2249160, *3 (S.D. Fla. Aug. 6, 2025) (applying a similar damages limitation provision available under the same ticket contract).

**II.     The Athens Convention's damages limitation was reasonably communicated to Plaintiff.**

There is a two-pronged test to determine whether a contract term was reasonably communicated. *See Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1367 (11th Cir. 2018). First, the Court evaluates the "physical characteristics of the clause," i.e., the "physical location or readability" of it. *See id.* Second, the Court analyzes "the passenger's opportunity to become meaningfully informed of the contract terms." *See id.* Both requirements are satisfied in this case.

   **A.  The physical characteristics prong is satisfied.**

Under the first prong of the reasonable communication test, courts examine the physical characteristics of the contract such as "the size, placement, font, and readability" of the clause, "among other objective characteristics." *See Roberts v. Carnival Corp.*, 824 F. App'x 825, 828 (11th Cir. 2020) ("This first factor is limited to a review of the contract itself."). To satisfy this prong, it is sufficient if the clause was "clearly set out and contained clear language." *Lebedinsky v. MSC Cruises, S.A.,* 789 F. App'x. 196, 200 (11th Cir. 2019).

The subject clause was specially set apart and physically conspicuous. At the top of the first page, the ticket contract contains a black box that begins with a bold introduction and is followed by all-caps type with a specific direction to important clauses, including Section 6.[1] Upon reaching

---

[1]

> **IMPORTANT NOTICE:** GUESTS ARE ADVISED TO CAREFULLY READ AND REVIEW THE TERMS AND CONDITIONS OF THE GUEST TICKET CONTRACT SET FORTH BELOW WHICH AFFECT YOUR LEGAL RIGHTS AND ARE BINDING. THE GUEST'S ATTENTION IS SPECIFICALLY DIRECTED TO SECTION 6 (LIMITATIONS AND DISCLAIMERS OF LIABILITY), SECTION 8 (LIABILITY LIMITATION FOR BAGGAGE AND VALUABLES), SECTION 11 (TIME LIMITATIONS FOR ACTIONS, MANDATORY ARBITRATION FOR CERTAIN CLAIMS AND WAIVER OF CLASS ACTIONS) AND SECTION 15 (VENUE AND GOVERNING LAW).
>
> GUESTS ARE ALSO ADVISED TO CAREFULLY READ AND REVIEW SECTION 4 AND CARRIER'S WEBSITE AT HTTPS://WWW.NCL.COM/SAFE WHICH CONTAIN IMPORTANT TERMS, CONDITIONS, POLICIES, PROCEDURES AND REQUIREMENTS RELATED TO PUBLIC HEALTH AND COVID-19.
>
> ACCEPTANCE OR USE OF THIS CONTRACT SHALL CONSTITUTE THE AGREEMENT OF GUEST TO THESE TERMS AND CONDITIONS.

Section 6, the passenger will find bold lettering for the section's title ("**Limitations and Disclaimers of Liability**"). Section 6(d) begins at the bottom of page 6 and covers most of page 7; it contains the operative Athens Convention language, which is also in all-caps, and has blue links to .pdf files of the Athens Convention.[2]

---

[2]

Bottom of Page 6:

> **(d)** ON ALL OTHER INTERNATIONAL CRUISES WHICH NEITHER EMBARK, DISEMBARK NOR CALL

Top of Page 7:

> AT ANY U.S. PORT OR EUROPEAN MEMBER STATE, CARRIER SHALL BE ENTITLED TO ANY AND ALL LIABILITY LIMITATIONS AND IMMUNITIES FOR DEATH AND/OR PERSONAL INJURY AS PROVIDED IN THE ATHENS CONVENTION RELATING TO THE CARRIAGE OF PASSENGERS AND THEIR LUGGAGE BY SEA, 1974 AND THE PROTOCOL OF 2002 TO THAT CONVENTION (TOGETHER, THE "ATHENS CONVENTION") ON THE LIABILITY OF CARRIERS TO PASSENGERS IN THE EVENT OF ACCIDENTS. THE ATHENS CONVENTION LIMITS THE CARRIER'S LIABILITY FOR DEATH OF OR PERSONAL INJURY TO A GUEST TO NO MORE THAN 400,000 SPECIAL DRAWING RIGHTS ("SDR") PER GUEST (APPROXIMATELY U.S. $570,000, WHICH FLUCTUATES DEPENDING ON THE DAILY EXCHANGE RATE AS PUBLISHED IN THE WALL STREET JOURNAL). LIABILITY OF THE CARRIER FOR LOSS OF OR DAMAGE TO GUEST'S LUGGAGE OR OTHER PROPERTY SHALL NOT EXCEED 2,250 SDR (APPROXIMATELY U.S. $3,200 WHICH FLUCTUATES, DEPENDING ON A DAILY EXCHANGE RATE AS PRINTED IN THE WALL STREET JOURNAL) PER GUEST UNDER THE ATHENS CONVENTION. IF THE LOSS OR DAMAGE WAS CAUSED BY A SHIPPING INCIDENT, DEFINED AS A SHIPWRECK, CAPSIZING, COLLISION OR STRANDING OF THE SHIP, EXPLOSION OR FIRE IN THE SHIP, OR DEFECT IN THE SHIP (AS DEFINED BY THE ATHENS CONVENTION), CARRIER'S LIABILITY IS LIMITED TO NO MORE THAN 250,000 SDRS PER PASSENGER (APPROXIMATELY U.S. $345,000). COMPENSATION FOR LOSS CAUSED BY A SHIPPING INCIDENT CAN INCREASE TO A MAXIMUM OF 400,000 SDRS PER PASSENGER (APPROXIMATELY U.S. $570,000) UNLESS CARRIER PROVES THAT THE SHIPPING INCIDENT OCCURRED WITHOUT CARRIER'S FAULT OR NEGLECT. SHIPPING INCIDENTS DO NOT INCLUDE ACTS OF WAR, HOSTILITIES, CIVIL WAR, INSURRECTION, NATURAL DISASTERS, OR INTENTIONAL ACTS OR OMISSIONS OF THIRD PARTIES. IN CASES WHERE THE LOSS OR DAMAGE WAS CAUSED IN CONNECTION WITH WAR OR TERRORISM, CARRIER'S LIABILITY FOR ANY PERSONAL INJURY OR DEATH (WHETHER OCCURRING DURING A SHIPPING INCIDENT OR A NONSHIPPING INCIDENT) IS LIMITED TO THE LOWER OF 250,000 SDRS PER PASSENGER (APPROXIMATELY U.S. $357,000) OR 340 MILLION SDRS (APPROXIMATELY U.S. $486,200,000) PER SHIP PER INCIDENT. PUNITIVE DAMAGES ARE NOT RECOVERABLE FOR CRUISES COVERED BY THE ATHENS CONVENTION. ONLY APPLICABILITY AND THE LIABILITY LIMITS PROVISIONS OF THE ATHENS CONVENTION SHALL APPLY TO CLAIMS ARISING UNDER THIS PARAGRAPH, WITH PARAGRAPH 15 OF THIS CONTRACT DETERMINING THE VENUE AND CHOICE OF LAW APPLICATION AND PARAGRAPH 11 OF THIS CONTRACT DETERMINING TIME LIMITATIONS OF ACTIONS, ARBITRATION, AND WAIVER OF CLASS ACTION RIGHT. THE PARTIES DO NOT INTEND TO INCORPORATE ANY PROVISION FROM THE ATHENS CONVENTION OTHER THAN WHAT IS EXPLICITLY STATED HEREIN. FOR A COPY OF ATHENS CONVENTION 1974, VISIT https://treaties.un.org/doc/Publication/UNTS/Volume%201463/volume-1463-I-24817-English.pdf, AND FOR A COPY OF ATHENS CONVENTION 2002 PROTOCOL, VISIT https://treaties.un.org/doc/Publication/UNTS/No%20Volume/24817/A-24817-080000028053bf55.pdf. (FULL TEXT IN ENGLISH BEGINS ON PAGE 40).

Judges in the Southern District of Florida consistently conclude on summary judgment that such physical provisions satisfy the first prong, and they are consistently affirmed on appeal. *See Caron*, 910 F.3d at 1367 (affirming summary judgment while noting the plaintiff did not "object to the physical location or readability of the waiver language"); *Est. of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1246 (11th Cir. 2012), *superseded by statute on other grounds* ("On the very first page of that packet documents was a single-page 'Dear Guest(s)' letter, the close of which contained, in all capital letters a section labeled, 'IMPORTANT NOTICE TO GUESTS,' specifically directing attention to the terms and conditions at the back of the brochure."); *Nash v. Kloster Cruise A/S*, 901 F.2d 1565, 1567 (11th Cir. 1990) ("NOTICE: THE PASSENGER'S ATTENTION IS SPECIFICALLY DIRECTED TO THE TERMS AND CONDITIONS OF THIS CONTRACT APPEARING ON PAGES 6, 7, AND 8"); *see also Robinson v. Carnival Corp.*, 2025 WL 1257737, *5 (S.D. Fla. Apr. 30, 2025) (Altman, J.) ("[E]asily conclud[ing] that the Ticket Contract's physical characteristics reasonably communicate its limitations period to prospective passengers . . . ."), *appeal dismissed* 2025 WL 2501849 (11th Cir. July 28, 2025); *Roberts v. Carnival Corp.*, 2022 WL 834905, at *5–6 (S.D. Fla. Mar. 21, 2022) (Bloom, J.) ("[T]he Ticket Contract is sufficiently clear and conspicuous to meet the first prong of the reasonable communicative test"), *appeal dismissed* 2022 WL 4639639 (11th Cir. Aug. 12, 2022). In fact, Judge Moore recently analyzed this precise ticket contract and a related Athens Convention issue and concluded the first prong was satisfied. *See Ritcey*, 2025 WL 2249160 at *4.

There is no reason to distinguish this case from the long line of cases in which courts have deemed similar or identical clauses enforceable. Accordingly, this Court should find the first prong of the reasonable communication test satisfied.

### B. Plaintiff had two months to become meaningfully informed of the contract's terms before the cruise began, and he accepted the contract on embarkation day.

The second prong in the reasonable communication test asks whether Plaintiff had a meaningful opportunity to be informed of the terms at issue. *See Caron*, 910 F.3d at 1367. A passenger has meaningful opportunity if they could read "the contract online, before, during, or after embarking on the cruise or suffering [their] alleged injuries." *McCluskey El v. Celebrity Cruises, Inc.*, 2023 WL 3035216, at *2 (11th Cir. Apr. 21, 2023).

The second prong is satisfied in this case. Plaintiff booked the cruise on November 4, 2023. [D.E. 37 at ¶ 1]. On that day, Plaintiff received an email from Norwegian and was instructed that he must accept the contract's terms before boarding. [D.E. 35 at ¶ 8]. Plaintiff, however, did not immediately accept the terms. [D.E. 35 at ¶ 11]. And because Plaintiff did not accept the ticket contract between November 4 and January 4, Plaintiff was required to accept the Ticket Contract while in New Zealand before boarding. [D.E. 35 at ¶¶ 12–13] and [D.E. 37 at ¶ 2]. Ultimately, there is no genuine dispute that Plaintiff accepted the contract's terms and had reasonable opportunity before boarding to review the Athens Convention's terms. *See Williams v. Carnival Corp.*, 576 F. Supp. 3d 1112, 1121–22 (plaintiff accepted the terms and conditions the day before the injury).

Plaintiff may argue that he did not read the ticket contract, but that is "not relevant" for the second prong in the analysis. *See Est. of Myhra*, 695 F.3d at 1246 n.42 (citing *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1282 (11th Cir. 2009)) ("We note that whether the Myhras chose to avail themselves of the notices and to read the terms and conditions is not relevant to the reasonable communicativeness inquiry."); *see also Baer v. Silversea Cruises Ltd.*, 752 F. App'x 861, 866 (11th Cir. 2018). Instead, it is dispositive that Plaintiff had significant time and, thus, meaningful opportunity to review the contract's terms. Because Plaintiff accepted the contract before boarding and after he had two months to review the terms, the second prong of the test is met.

## **Conclusion**

The damages limitation from the Athens Convention can apply as a contract term so long as the term is reasonably communicated to the passenger, which is a two-pronged test. Because both prongs of the test are met, the Court should enforce the damages limitation in this case, as raised in Norwegian's First Affirmative Defense.

WHEREFORE, under Federal Rule of Civil Procedure 56(a), Norwegian respectfully requests that the Court grant summary judgment on Norwegian's First Affirmative Defense and any other relief that the Court deems just and proper.

        Respectfully submitted,

        MASE SEITZ BRIGGS, P.A.
        2601 South Bayshore Drive, Suite 800
        Miami, Florida 33133
        Telephone: (305) 377-3770
        Facsimile: (305) 377-0080

        By: */s/ Tyler Rauh*
           WILLIAM R. SEITZ
           Florida Bar No. 73828
           wseitz@maselaw.com
           CHARLOTTE A. ROBINSON
           Florida Bar No. 1039863
           crobinson@maselaw.com
           TYLER J. RAUH
           Florida Bar No. 1023404
           trauh@maselaw.com